**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


ELIZABETH GALLOWAY, et al.,      :      **CLASS ACTION**
     Plaintiffs,      :
     :
     v.      :      **NO. 01-835**
     :
SOUTHWARK PLAZA LIMITED      :
PARTNERSHIP, et al.,      :
     Defendants.      :


## <u>MEMORANDUM OPINION</u>

Davis, J.      October \_\_ , 2003

     Pursuant to the attached Order, dated September 25, 2003, (Docket No. 60)  this Court

approves the Stipulation in Settlement as fair, reasonable, and adequate, certifies the class

because it meets the requirements of Federal Rule of Civil Procedure 23(a), approves the

proposed Notice of Final Settlement, and dismisses the claims in the above action with prejudice.

This memorandum opinion is hereby submitted by way of explanation of that Order.

## I.      <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY</u>

_____On behalf of herself and other similarly situated plaintiffs, Elizabeth Galloway

("Plaintiff") commenced this class action lawsuit on February 27, 2001, against Defendants

Southwark Plaza Limited Partnership, CDA Southwark, Inc., NHP Management Company,

Felicia Moten, the Philadelphia Housing Authority, William Keith and Carl Greene, alleging,

*inter alia*, violations of the U.S. Housing Act, 42 U.S.C. § 1437 ("Housing Act")[1], and 42 U.S.C.

---

[1] "[T]he purpose of the Housing Act is twofold: (1) to establish a program of federal aid to local agencies engaged in providing decent, safe, and sanitary housing for lower income families, while at the same time (2) vesting maximum responsibility in the administration of housing programs with local public housing authorities."  <u>Rivera v. Reading Housing Authority</u>, 819 F.Supp. 1323, 1329 (E.D. Pa.), *affirmed*, 8 F.3d 961 (3d Cir. 1993).

§ 1983 ("Section 1983")[2].

Plaintiff is an adult residing in a rental unit at Southwark Plaza (a/k/a "Courtyard Apartments at Riverview" and hereinafter "Courtyard") in Philadelphia, Pennsylvania. The Courtyard is currently owned by Defendant Southwark Plaza Limited Partnership ("SPLP"). Defendant CDA Southwark, Inc. ("CDA") is the managing general partner of SPLP. Defendant NHP Management Company ("NHP") is the management company responsible for managing the Courtyard pursuant to a Management Agreement between NHP and SPLP, and Defendant Felicia Moten is an employee of NHP and the current manager of the Courtyard (SPLP, CDA, NHP and Moten shall be referred to hereinafter as "Southward Defendants"). Defendant Philadelphia Housing Authority ("PHA") administers the Housing Act locally and was the original developer and owner of the Courtyard, and Defendants William Keith and Carl Greene are PHA employees (PHA, Keith and Greene shall be referred to hereinafter as "PHA Defendants").

Ownership of the Courtyard was transferred by PHA to SPLP in approximately January of 1998. The purpose of this transaction was to establish a "mixed-finance project," pursuant to 42 U.S.C. § 1437z, for the rehabilitation and reconstruction of the rental units at the Courtyard. In addition to transferring ownership of the property, PHA entered into a Regulatory and Operating Agreement ("R&O Agreement") with SPLP. Also in approximately January of 1998, PHA entered into an Annual Contributions Contract ("ACC") with the U.S. Department of Housing & Urban Development ("HUD") providing that various sources of funds, including the

---

[2] "One of the principal purposes of section 1983 was precisely to 'give a remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position,' that is, to provide a remedy against individual officials who violate constitutional rights." Ascolese v. Southeastern Pennsylvania Transp. Authority, 925 F.Supp. 351, 362 (E.D. Pa. 1996) (quoting Monroe v. Pape, 365 U.S. 167, 172 (1961)).

annual operating subsidy, would be assigned to the development. Accordingly, the mixed-financing consisted of these funds from HUD and tax credit funding pursuant to 26 U.S.C. § 42(g).

In her Complaint, Plaintiff alleges that Defendants have violated various applicable provisions of the Housing Act, as well as various applicable regulations established by HUD at Title 24 ("Housing and Urban Development") of the Code of Federal Regulations. Plaintiff also alleges that Defendants have violated provisions of the ACC, provisions of the R&O Agreement, and provisions of the Management Agreement entered into between SPLP and NHP for the management of the Courtyard. The Complaint seeks monetary, injunctive, and declaratory relief.

The parties have entered into a proposed Stipulation in Settlement of all issues raised in the Complaint. On January 30, 2003, Plaintiff and Defendants submitted a Joint Motion for Conditional Certification and Approval of Preliminary Notice to the Class ("Joint Motion") (Docket Entry No. 34), and on February 19, 2003, the Court granted the Joint Motion and scheduled a final approval hearing for June 12, 2003 (Docket Entry No. 36). Plaintiff and Defendants define the Class as "all current or future tenants who are residing, or who will reside, in rental units at the Courtyard, Philadelphia, Pennsylvania, and all tenants who formerly resided in a rental unit at the Courtyard at any time after December 1, 1997." Joint Motion at ¶ 4. The members of the class were notified of the proposed settlement and the settlement hearing by first-class mail (postage prepaid) addressed to each class member's last known address. Included with each notice was a check-off form for opting out of the class action, along with a self-addressed and stamped envelope for the return of the form to counsel for the Class. Sixteen class members

have requested to be excluded from the class[3], and no class members have submitted objections to the proposed settlement.  Plaintiffs have filed a Memorandum in Support of Court Approval of the Proposed Class Action Settlement (Docket Entry No. 52), which is unopposed by Defendants.

## II.    DISCUSSION

Before this Court can grant final approval of the settlement, the plaintiff must demonstrate that the proposed class satisfies the requirements of Rule 23.  Fed. R. Civ. P. 23; Barnes v. American Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998);  see also In re General Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig., 55 F.3d 768, 799-800 (3d Cir.) ("'a class is a class is a class,' and a settlement class, if it is to qualify under Rule 23, must meet all of its requirements"), *cert. denied*, 516 U.S. 824 (1995).

### A.    Rule 23(a)

Rule 23(a) (entitled "Prerequisites to a Class Action") states that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "These four elements are often referred to as numerosity, commonality, typicality, and adequacy of representation, respectively."  See In re LifeUSA Holding, Inc., 242 F.3d 136, 143 (3d Cir. 2001).

---

[3]Two additional class members have requested to be excluded but their requests are untimely.

## 1. Numerosity

_____ "Numerosity requires a finding that the putative class is so numerous that joinder of all members is impracticable." <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 182 (3d Cir. 2001). However, "[t]he exact number or identity of the members of the plaintiff class is not required." <u>Hanrahan v. Britt</u>, 174 F.R.D. 356, 362 (E.D. Pa. 1997). Plaintiff has submitted that the Class consists of hundreds of current and former Courtyard tenants, and the Defendants do not dispute that the joinder of all members of the proposed Class is impracticable. Therefore, the proposed Class satisfies the numerosity requirements under Rule 23(a)(1).

## 2. Commonality

Commonality demands that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement is not overbearing and is satisfied if there is "'at least one question of fact or law with the grievances of the prospective class.'" <u>Stewart v. Abraham</u>, 275 F.3d 220, 227 (3d Cir. 2001) (quoting <u>Baby Neal v. Casey</u>, 43 F.3d 48, 56 (3d Cir. 1994)). Additionally, the Class members need not share precisely identical claims, as "factual differences among the claims of the putative class members do not defeat certification." <u>Baby Neal</u>, 43 F.3d at 56. A common question sufficient to satisfy this factor exists where "defendants have acted in concert or pursuant to a common design," <u>Barnes</u>, 161 F.3d at 141, or where "all class members are subject to the same harm," <u>Baby Neal</u>, 43 F.3d at 56. Commonality has been found to exist in class actions asserting that a particular class of tenants has been harmed by a defendant's alleged non-compliance with the Housing Act. <u>See</u> <u>Collier v. Montgomery County Housing Authority</u>, 192 F.R.D. 176, 182 (E.D. Pa. 2000); <u>Hurt v. Philadelphia Housing Authority</u>, 151

F.R.D. 555, 559 (E.D. Pa. 1993).  In the instant case, common questions of law and fact pertaining to Defendants' alleged violations of public housing requirements are common to the Class members, and the commonality requirement is therefore satisfied.

**3.**     **Typicality**

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'"  <u>Eisenberg v. Gagnon</u>, 766 F.2d 770, 786 (3d Cir. 1985) (quoting <u>Weiss v. York Hospital</u>, 745 F.2d 786, 809 n. 36 (3d Cir. 1984), *cert. denied*, 470 U.S. 1060 (1985)).  "The heart of this requirement is that the plaintiff and each member of the represented group have an interest in prevailing on similar legal claims."  <u>Seidman v. American Mobile Systems, Inc.</u>, 157 F.R.D. 354, 360 (E.D. Pa. 1994); <u>see also</u> <u>Hanrahan</u>, 174 F.R.D. at 356 (typicality is established where the claims of all class members are based on the same systematic conduct and legal theories).

Plaintiff's claims against Defendants are typical of, if not identical to, the claims asserted by the other Class members, and they arise from the same course of conduct by Defendants as the claims of the other Class members.  <u>See</u> <u>Hoxworth v. Blinder, Robinson & Co., Inc.</u>, 980 F.2d 912, 923 (3d Cir. 1992) ("'[f]actual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory'" (citation omitted)).  This Court finds that Plaintiff's claims are typical of the claims of the Class members.

6

## 4.    Adequacy

The adequacy of representation inquiry is intended to assure that the absentees' interests are fully pursued by the class representative. See General Motors, 55 F.3d at 800. The courts have adopted a two-prong fairness and adequacy analysis: (i) whether the plaintiff's counsel is competent to conduct a class action; and (ii) whether the class representative's interests are sufficiently aligned with the interests of the class. See General Motors, 55 F.3d at 800-01. Here, Plaintiff's counsel is Community Legal Services, Inc., which the Court finds to be competent to conduct this class action lawsuit. Lastly, Plaintiff's interests do not appear to be antagonistic to the interests of the Class. Accordingly, this Class satisfies the requirements of Rule 23(a).

## B.    Rule 23(b)

Before the Court can certify a class, the class must also satisfy at least one of the three subsections of Rule 23(b). When a class's primary prayer is for monetary damages, and individuals are given the opportunity to opt out of the pending litigation, the courts are instructed to evaluate the class action under Rule 23(b)(3). See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732 (1974); Girsh v. Jepson, 521 F.2d 153, 158-59 (3d Cir. 1975); see also Kyriazi v. Western Elec. Co., 647 F.2d 388, 393 (3d Cir. 1981). Rule 23(b)(3) is satisfied if:

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability

> of concentrating the litigation of the claims in the particular forum;
> (D) the difficulties likely to be encountered in the management of a
> class action.

Fed. R. Civ. P. 23(b)(3). Thus, to certify a class action under Rule 23(b)(3), the Plaintiff must

satisfy the elements of predominance and superiority. In re Prudential Ins. Co., 148 F.3d 283,

313 (3d Cir. 1998).

Here, the Court has taken into consideration the following factors. No other Class

members have filed actions to adjudicate the claims raised in this action, and there is no

demonstrable interest of members of the Class in individually controlling the prosecution of

separate actions. There is no other pending litigation concerning the issues raised by this action.

Virtually all witnesses either live or work in Philadelphia and all documentary evidence is

located in Philadelphia, such that it is desirable to concentrate the litigation of the claims asserted

in this single forum. There are no difficulties likely to be encountered in the management of this

class action. The claims asserted by each Class member arise out of the same common issue,

namely whether Defendants' actions constituted a failure to comply with various statutes,

regulations and agreements applicable to the operation and management of the Courtyard rental

units. Also, the harms alleged by the Class members are similar, even though the precise

damages for each Class member will be calculated on an individual basis. Additionally, this

class action suit is superior to a plethora of individual suits based upon substantially similar

factual presentations and legal analysis, particularly because the individual costs of litigation

would substantially outweigh the maximum potential recovery. Therefore, the Court finds that

Rule 23(b)(3) is satisfied, and will certify the Class.

**C. Rule 23(e)**

After class certification, Rule 23(e) requires the district court to determine that the proposed settlement is fair, adequate, and reasonable. General Motors, 55 F.3d at 785. Rule 23(e) provides: "A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e).

> Courts and commentators have interpreted this rule to require courts to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." "Under Rule 23(e) the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members . . . . [T]he court cannot accept a settlement that the proponents have not shown to be fair, reasonable and adequate."

General Motors, 55 F.3d at 785 (citations omitted). "The district court has considerable discretion in determining whether a settlement is fair and reasonable, and its determination will be reversed only for abuse of discretion." Bryan v. Pittsburgh Plate Glass Co., 494 F.2d 799, 801 (3d Cir. 1974).

The Third Circuit has adopted a "nine-factor test to help district courts structure their final decisions to approve settlements as fair, reasonable, and adequate as required by Rule 23(e)." General Motors, 55 F.3d at 785 (citing Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir. 1975)).

> Those factors are: (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery;

and (9) the range of reasonableness of the settlement in light of all the
attendant risks of litigation.

Id. (citing Girsh, 521 F.2d at 157). In addition, "[t]he proponents of the settlement bear the

burden of proving that these factors weigh in favor of approval." Id.

In the instant case, the proposed settlement provides as follows: (a) all rental units at the

Courtyard shall be operated, managed and maintained as public housing units; (b) Defendants

shall exclusively utilize a particular lease, drafted by the parties, which conforms to 24 C.F.R. §§

966.4 and 966.6; (c) Defendants shall implement a grievance hearing process that conforms to

PHA's grievance hearing process; (d) all prospective rents shall be calculated in compliance with

42 U.S.C. § 1437a; (e) Southward Defendants shall conduct a utility allowance analysis in

accordance with 24 C.F.R. §§ 965.501 et seq., and shall prospectively adjust utility allowances at

the Courtyard in accordance with this analysis; (f) Defendants shall otherwise operate and

manage all rental units at the Courtyard in compliance with federal public housing law; (g) for all

Class members who initially paid public housing rents and were subsequently charged tax credit

rents, Defendants shall (i) recalculate and adjust such tenants' rental rates to public housing

rental rates, including the application of the PHA ceiling rent amounts, retroactive to the date that

each tenant was first made responsible to pay tax credit rents, and (ii) credit such tenants' rental

accounts with any sums necessary in order to carry out the retroactive recalculation and

adjustment of the rent; (h) for all other Class members who were charged rent in excess of

allowable public housing rent, Defendants shall recalculate and adjust such tenants' rents to

public housing rents for the period of time commencing on or after January 1, 2001; (i) rent

credits arising as a result of the recalculation and adjustment of rents shall be placed on a Class

member's rent account to be applied to future rent until such time as the credit is used up, unless: (i) the Class member is a negative or zero renter, in which case the credit shall be paid to the Class member in twelve monthly installments; (ii) a Class member moves to a non-Courtyard apartment, in which case the Class member shall receive, within 90 days, a check for any credit balance remaining on that tenant's account; (iii) a Class member does not reside at the Courtyard at the time of the entry of the final order, in which case the Class member shall receive a check for that tenant's net credit balance within 60 days; or (iv) a credit balance remains on a class member's account after two years, in which case the balance shall be paid to the class member in the form of a check; (j) Plaintiff Elizabeth Galloway shall receive the same relief as would any other class member based upon her individual circumstances; (k) PHA Defendants shall assign a specific PHA employee the responsibility of monitoring Southward Defendants in order to insure that the rental units at the Courtyard are operated and managed in compliance with the Housing Act and 24 C.F.R. § 961.606(n)(1)(B)(iii); (l) PHA Defendants shall provide Class counsel with an annual report for the next five years regarding the actions taken by PHA to carry out such monitoring; (m) Defendants shall pay Community Legal Services $121,500.00 for attorney's fees through October 28, 2002; (n) Class counsel may apply to the Court for an award of reasonable attorney's fees and expenses for the period of time commencing on October 29, 2002; (o) the Court shall retain jurisdiction over this matter for 15 years from the date of the entry of the final order; and (p) the Class members shall release Defendant from all claims asserted in this action.

## 1. Complexity, Expense, and Likely Duration of Litigation

The instant case was filed more than two years ago, in February of 2001. Since that time the parties have undertaken significant informal discovery and have engaged in extensive

settlement negotiations. Nonetheless, absent settlement, this case would probably proceed upon a protracted course of litigation ultimately leading to trial (likely including motions to dismiss and motions for summary judgment), forcing both sides to engage in costly and time-consuming merits discovery and trial preparations.

Furthermore, this case involves a significant number of complex issues, including: whether all of the Courtyard units must be operated as public housing units; the calculation of tenant rents in complaint with the Housing Act; the implementation of a grievance hearing process that conforms to the PHA process; the utilization of a lease that satisfies the requirement of the federal public housing law; the implementation of a utility allowance system that meets the requirements of 24 C.F.R. §§ 965.501 et seq.; and whether the PHA Defendants have satisfied the monitoring requirements in 42 U.S.C. § 1437 and 24 C.F.R. § 941.606(n)(1)(iii). Considering these factors, this case is an ideal candidate for immediate settlement, resulting in the avoidance of unnecessary delays and monetary expenditures by both parties.

**2.      The Reaction of the Class to the Settlement**

The Notice of Proposed Settlement was mailed to a total of 491 Class Members who are current tenants at the Courtyard, and 45 former tenants. Only seventeen Class members have timely filed requests for exclusion, and no Class members have objected to the proposed settlement. This small percentage of dissenting class members and/or members exercising the opt out right weighs in favor of the conclusion that the proposed settlement is fair, adequate, and reasonable. See Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990) (29 objections out of 281 class members "strongly favors settlement"); Fischer v. Madway, 485 A.2d 809, 813 (Pa. Super. 1984) (14 objection out of 1000 class members supports settlement).

3.      **The Stage of the Proceedings and Discovery Completed**

The parties arrived at an arms-length settlement only after extensive informal discovery was undertaken.  Therefore, during the numerous and adversarial settlement conferences, "the parties certainly [had] a clear view of the strengths and weaknesses," of their case.  In re Warner Communications Securities Litig., 618 F. Supp. 735, 745 (S.D.N.Y. 1985), aff'd, 798 F.2d 35 (2d Cir. 1986).  Furthermore, counsel for both parties are intimately familiar with the facts in this case, and since the Court is "confident there was no collusion," Saunders, 2002 WL 1497374 at *10, among the lawyers in the settlement, considerable weight is given to the views of experienced counsel as to the merits of the settlement.  See Lake v. First Nationwide Bank, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class."); Saunders, 2002 WL 1497374 at *10 ("The Court is therefore deferential to the reasoned judgment of the well-informed attorneys.").  This factor weighs in favor of approval of the settlement.

4.      **The Risks of Establishing Liability and Damages**

"By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them."  General Motors, 55 F.3d at 814 (C.A.3 (Pa.),1995).  Here, while it is not clear that there was a substantial risk of being unable to establish Defendants' liability based upon violating the pertinent statutes, regulations and contractual provisions, there was a risk that certain individual Class members might be precluded from recovering as a result of the applicable statute of limitations.  This risk in establishing that all Class members would be entitled to damages also weighs in favor of approving the settlement.

**5.      The Risks of Maintaining the Class Through Trial**

"Class certification is always conditional and may be reconsidered." <u>Saunders</u>, 2002 WL 1497374 at *12; <u>see</u> <u>Rendler v. Gambone Bros. Dev. Co.</u>, 182 F.R.D. 152, 160 (E.D. Pa. 1998). It is likely that Defendants would have raised a number of issues in favor of decertification during trial and/or on appeal, and there is no certainty that the Class would have maintained certification. There is always a perpetual risk of maintaining the class throughout the trial and on appeal, and the Class has sufficiently eliminated this risk by entering into settlement with the Defendants. This factor does not weigh against approval of the settlement.

**6.      The Ability of Defendants to Withstand a Greater Judgment**

Although Defendants could perhaps withstand a greater judgment against them, the Class members will receive, as a result of this settlement, virtually all of the relief sought by this action: all Class members will receive immediate relief in the form of: retroactive rent adjustments; prospective rent recalculations; the establishment of a lease, a grievance procedure, and a utility allowance system in compliance with federal housing laws; and the monitoring by PHA Defendants in order to insure that Class members receive all public housing rights. This factor does not weigh against approval of the settlement.

**7.      The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of Litigation Risks**

As noted above, the proposed settlement will provide prospective relief to the Class members in the form of all of the public housing tenant rights to which they are entitled, and the proposed settlement will provide all retroactive relief to the Class members which can feasibly be

provided retroactively, such as rent adjustments.[4]  Because the Class members will receive

virtually all of the relief sought pursuant to the proposed settlement, these factors weigh strongly

in favor of approval of the settlement.

Upon a careful balance of the nine <u>Girsh</u> factors it is clear that this settlement proposal is

in the best interests of all parties involved, particularly the individual Class members, and that it

is a fair, adequate, and reasonable alternative to protracted and costly litigation and the

unpredictable outcome of proceeding to trial.

**D.       Award to Class Representative**

Class representative Elizabeth Galloway will receive the same relief as all other Class

members pursuant to the proposed settlement.

**E.       Attorney's Fees and Reimbursement of Costs**

The court is required to thoroughly review the reasonableness of attorney's fees in all

class action settlements.  <u>Saunders</u>, 2002 WL 1497374 at *14; <u>see</u> <u>also</u> <u>General Motors</u>, 55 F.3d

at 819 ("a thorough judicial review of fee application is required in all class action settlements").

For these reasons, the proposed attorney's fees and reimbursement of expenses are approved.

**III.      <u>CONCLUSION</u>**

For the reasons stated herein and pursuant to the attached Order, dated September 25,

2003, (Docket No. 60) this Court approves the Stipulation in Settlement, certifies the class in

accordance with Federal Rule of Civil Procedure 23(a), approves the proposed Notice of Final

Settlement, and dismisses the claims in the above action with prejudice.  The Order follows.

---

[4] Of course, certain forms of relief cannot be provided retroactively.  For example, it would be impossible to retroactively provide a grievance procedure or a lease which satisfies public housing requirements.

1